# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY NGUYEN, | Case No. 1:11-cv-00809-AWI-SKO (PC) |
| Plaintiff, | ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS, (2) DENYING MOTION FOR STAY AS MOOT, AND (3) DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL AND FOR SANCTIONS |
| v. | |
| M. D. BITER, | |
| Defendant. | |
| | (Docs. 113, 116, and 118) |

## I.  Procedural History

Plaintiff Anthony Nguyen ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 18, 2011. This action is proceeding against Defendant M. D. Biter ("Defendant") for violation of the Eighth Amendment of the United States Constitution, a claim which arises from Plaintiff's allegations that he was exposed to arsenic-contaminated water while at Kern Valley State Prison in Delano, California.[1]

On September 16, 2014, Defendant filed a motion seeking terminating sanctions against Plaintiff for engaging in a pattern of abusive conduct toward opposing counsel, and on September 23, 2014, Defendant filed a motion to stay the proceedings pending resolution of his motion for terminating sanctions. (Docs. 113, 116.) Plaintiff filed an opposition to the sanctions motion on

---

[1] Plaintiff is presently incarcerated at California State Prison-Centinela in Imperial.

September 29, 2014,[2] and an opposition to the stay motion on October 1, 2014. (Docs. 117, 119.) Defendant filed a reply to the opposition to his sanctions motion on October 15, 2014; and Plaintiff filed a supplemental exhibit to his opposition on October 20, 2014, which the Court notified the parties it would consider in the order filed on October 28, 2014. (Docs. 123, 124.)

On October 1, 2014, Plaintiff filed a motion for the appointment of counsel and counter-motion for sanctions. (Doc. 118.) Defendant did not file a response.

The motions were submitted upon the record without oral argument pursuant to Local Rule 230(*l*). For the reasons which follow, Defendant's motion for sanctions is granted in part and denied in part, Defendant's motion for a stay is denied as moot, and Plaintiff's motion for the appointment of counsel and for sanctions is denied.

## II. Defendant's Motion for Terminating Sanctions

### A. Summary of Parties' Positions

#### 1. Defendant's Motion[3]

Invoking the inherent authority of federal courts to sanction abusive litigation conduct, Defendant seeks terminating sanctions against Plaintiff for engaging in a pattern of escalating harassment against Defendant's former counsel, Deputy Attorney General Kelly A. Samson ("DAG Samson"), who represented him from January 2013 to September 2014.[4] *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). (Docs. 74, 112; Doc. 113-2, Samson Dec., ¶2.) In the alternative, Defendant seeks monetary sanctions.

---

[2] Plaintiff's opposition is located on pages 10-52 of document 117, entitled "Supplement to Motion for Summary Judgment."

[3] Defendant seeks terminating sanctions based on five letters written by Plaintiff. One of the letters, however, was written to a different defense attorney in a different case. (Doc. 113-2, Motion, Ex. E.) That letter is omitted from discussion because sanctions under the Court's inherent authority are limited to conduct in this action. *Anheuser-Busch, Inc. v. Natural Beverages Distribs.*, 69 F.3d 337, 348-49 (9th Cir. 1995). To the extent the fifth letter provides grounds for the imposition of sanctions against Plaintiff for engaging in behavior which interferes "'with the orderly administration of justice,'" resolution of that issue rests with the court presiding over the affected case. *Anheuser-Busch, Inc.*, 69 F.3d at 348 (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)).

[4] For a six-month period of time between April and October 2013, the action was assigned to DAG Joanna B. Hood. (Docs. 83, 93.) This discrepancy, which is noted by Plaintiff, is irrelevant to the events at issue in Defendant's motion for terminating sanctions. (Doc. 117, Opp., court record. p. 16.)

2

On January 16, 2014, the Court issued a discovery and scheduling order, which set the discovery deadline for September 6, 2014; and on August 6, 2014, DAG Samson filed a request for leave to depose Plaintiff by videoconference, which the Court granted on August 11, 2014. (Docs. 97, 106, 107.)

On August 7, 2014, prior to Plaintiff's deposition, Plaintiff sent DAG Samson the first letter which Defendant contends contained questionable content. (Samson Dec., ¶4A.) Defendant points out that the letter, which he characterizes as flippant in tone but not unusual given Plaintiff is incarcerated and proceeding pro se, described Plaintiff's trial strategy and opined that Defendant's case was hopeless. (*Id.*) Plaintiff ended the letter by telling DAG Samson good luck and addressing her by her middle name, Ariana. (*Id.*) DAG Samson attests that during her subsequent deposition of Plaintiff, he told her he learned her middle name doing case research. (*Id.*)

On August 16, 2014, Plaintiff sent DAG Samson a second letter which Defendant describes as "unduly familiar and disrespectful." (*Id.*, ¶4B, Ex. B.) Plaintiff addressed counsel as "Kelly 'Arry' Samson" and ended the letter with "(xoxo)." (*Id.*) In the body of the letter, Plaintiff opined that DAG Samson must have had a rough childhood because she was abusing herself by continuing with the case, and he stated that he will give her "one freebie silver bullet" since she is not a male attorney. (*Id.*) Plaintiff also wrote, "What ever happened about the charm your momma ~~complimented~~ told me? Who informed you that I didn't want to be groomed?" (*Id.*) In closing, Plaintiff stated, "Hey, maybe after the dust settles, we could all be friends and sing koom-bye-yah." (*Id.*)

On August 27, 2014, DAG Samson conducted Plaintiff's deposition by videoconference and later that day, Plaintiff drafted the third letter. (*Id.*, ¶4C, Ex. C.) The third letter again addressed DAG Samson as "Kelly 'Arry' Samson" and ended the letter with "(xoxo)." (*Id.*) In the body of the letter, Plaintiff wrote, "[P]art of the terms of settlement will be for you to provide a photo of yourself to start my collection of 'crushed' opposition;" and Plaintiff set forth his opinion regarding the deposition proceedings, including "[y]our demeanor and tone signaled to me on a visual and psychic level that you lack confidence in defeating my claims and this is futile." (*Id.*)

3

Plaintiff also stated, "I am a self-proclaimed exhibitionist. Imagine the antics you witnessed at the deposition at our trial . . . . I ain't bluffin', ask my public defender . . . if you're skeptical." (*Id.*) In the postscript, Plaintiff wrote, "I might allow you to go to trial so that we can confer more . . . must be something primal," and he stated, "As a discourtesy, you get the originals." (*Id.*) DAG Samson attests that she interpreted Plaintiff's statement regarding sending her original copies of his letter "as a discourtesy" as referring to the warts on his face and palms, described in his first and third letters. (*Id.*)

Finally, on August 29, 2014, Plaintiff sent DAG Samson a fourth letter again addressing her as "Kelly 'Arry' Samson." (*Id.*, ¶4D, Ex. D.) Defendant describes the fourth letter as inappropriate throughout and an alarming escalation from the previous letters, which partially contained some arguably legitimate legal communications. (*Id.*) In the fourth letter, Plaintiff wrote, "Come here & let's discuss settling privately in person, no cams," and stated that if his case does settle, "me and 40+ inmates don't get a field trip w/ some eye candy while CDCR or Biter's end picks up the tab. I will emphasize the eye candy. I suggest that for any ladies throughout the trek to not put on make-up & to don burkas." (*Id.*) Plaintiff also wrote, "I was taken aback for the lack of a spray of perfume or an unmarked petroleum imprint – but the bubbly high school-esque signature [will] do," and suggested DAG Samson send him "provocative photos," while referring to her physical appearance in the letter. Plaintiff closed the letter with "xoxo Big Daddy," and included a partially-completed visitor's questionnaire. Defendant cites the following excerpts from the letter as examples of Plaintiff's improper statements:

> Discretely send a photo of yourself . . . If you're not that type of attorney, then substitute a medium shot of yourself. Every photo you send will buy you 1 week. If they are strong enough, I'll double or triple it – I'll let you know.

> Hell, I'll admit to you that provocative photos are a form of currency here – yours will be private so don't worry. If money you can't spend to manipulate me, perhaps this type of payment method can work as a compromise.

> The provo. pics game is to manipulate the spawning or not of the deadline.

> I've made 3-pointers when women are present so don't be surprised of the charming effect of yours is eliciting. I am not focused due to your charms – your inquiry of my release date or possibility of didn't help. Having a Marlee Matlin look-alike ask questions ripped from a date and speak it pronounced Vietnamese pushed all the right buttons.

4

> [O]nce I defeat you & collect damages, I can buy other stranger's provocative pix formally.
>
> Here is an alternative if you're camera shy: provide me w/ photos of others (you might have to grease their palms to show some prison-friendly skin).
>
> We know each other on a psychic level, but on a conscious level do not intimately. [T]hat can change if you'd like.
>
> Our meeting could have (or should) a larger purpose than what we can observe.
>
> Six hour drive to see me, eh?  How's about you cut the trip to x2 3 hour drives for a contact attorney visit?  I'll send you a visiting form . . . so that we can confer more aggressively & passionately!  See if I care about the Game . . . I can collect photos other ways post-trial.  Does it make me a romantic or weirdo for sniffing for perfume for coded signs of affection?

(*Id.*)

In seeking sanctions, Defendant argues that Plaintiff's letters caused DAG Samson to feel unsafe having any further contact with Plaintiff, and she requested the case be reassigned, which it was, to a DAG Timothy H. Delgado. (Samson Dec., ¶6.)  Defendant argues that Plaintiff's letters demonstrate an escalating pattern of harassment; and if unchecked, there is no telling how far he may go; Defendant points out that Plaintiff is serving a life sentence for attempting to murder a woman.  (Doc. 113-3, Delgado Dec., Ex. B.)  Defendant also argues that the reassignment of this case to a male attorney was not cost-free, as it required the new attorney to spend hours familiarizing himself with the case and required him to build trust and rapport with his client.

### 2.     **Plaintiff's Opposition**

Plaintiff denies engaging in harassment, and characterizes his letters as merely abrasive and sarcastic.  Plaintiff advances a number of arguments in opposition to Defendants' motion. First, Plaintiff argues that since DAG Samson was reassigned and is no longer handling the case, Defendant's motion for sanctions is moot because its purported purpose – to stop the harassment of DAG Samson – has been met; and any consideration of the motion under the circumstances would be compound, redundant, and prejudicial.  (Doc. 117, Opp., court record p. 14.)

Plaintiff also states that the reason his letters to DAG Samson increased in frequency during the weeks in question is that counsel informed him once motions are filed, they exit the informal realm and issues are not worth discussing informally.  (*Id.*)

5

Plaintiff represents he learned of the purpose of summary judgment during that time and he drafted a motion for summary judgment. (*Id.*, p. 15.) In "recalling" counsel's dislike for response deadlines created by his filings, he mailed the motion to her in an effort to solicit interest in settlement. (*Id.*) In the absence of any interest, he then filed his motion. (*Id.*) Plaintiff contends that his conduct toward DAG Samson is unrelated and moot because she is no longer "pertinent" to this case; and that "[t]he fatal flaw to defense counsel's under-handed efforts akin to a tag-team match is: if former defense counsel remained, and did the motion herself, then it would have had a more profound effect . . . probably would've provided the motion with merit - - unlike the current defense counsel's." (*Id.*) Plaintiff states that it is improper for current counsel to seek sanctions based on now-unrelated matters and to cause him prejudice before the Court. (*Id.*) Plaintiff asserts that he had a First Amendment right to make abrasive remarks to DAG Samson, and that Defendant is engaging in "white-washing" by relying on statements in his letters that he redacted. (*Id.*) Plaintiff also contends that Defendant's current counsel is engaging in kicking a dead horse by pressing issues which are irrelevant and moot. (*Id.*)

Plaintiff argues that DAG Samson's declaration statements regarding her safety concerns are exaggerated and lack credibility in light of her failure to object to his "abrasive" statements and to file a civil suit against him for sexual harassment, as he did in an unrelated matter. (*Id.*, p. 16.) Plaintiff contends that Defendant's motion for sanctions is politically motivated and DAG Samson, now that she is "irrelevant" to the case, is attempting to assist DAG Delgado in the "moot attempt" to terminate the case by claiming sexual harassment. Plaintiff also contends that his prison history is free negative remarks concerning female staff, which is why Defendant relies on a reference to a nearly-decade old incident (his underlying conviction) with no pattern of repetition.

Plaintiff points out that Defendant acknowledged his first letter was innocuous; and he argues that it was not unlawful for him to refer to DAG Samson by her name as provided in public records and if she sincerely believed it was an issue, she would have moved to redact it. (*Id.*, p. 17.) With respect to his second letter, Plaintiff contends that if DAG Samson had responded to his letters regarding his willingness to settle and his planned motions, he would not have had to

6

readdress issues; and he contends again that current counsel is attempting to prejudice him by reproducing portions of his letters that he struck. (*Id.*)

Regarding his third letter, Plaintiff argues that just as boxers and mixed-martial artists collect photos of their defeated adversaries, a photo of DAG Samson, once defeated, would serve that purpose for him. (*Id.*) Plaintiff contends that Defendant conveniently omitted the fact that he sought a photo of current counsel for the same purpose. Plaintiff also takes issue with counsel's attempt to "censor" his speech and "demonize" his use of the word "exhibitionist," which he used to mean "show-off." (*Id.*, p., 18.) Plaintiff also challenges the purported impropriety of his use of "xoxo" to close his letters, arguing that it was derived from a football playbook with X representing his opponent and O representing himself; and he objects to Defendant's speculation regarding the meaning behind his use of the word "primal," and to Defendant's citation to his remark regarding "discourteous" service of original documents as irrelevant, prejudicial, speculative, and erroneous given that his skin condition is not contagious. (*Id.*) Plaintiff argues that his abrasive, sarcastic remarks to DAG Samson were lawful and were not sexual harassment because they were taken out of context and nothing explicitly sexual was written. (*Id.*) Plaintiff argues that requesting a photo, discretely or not, is not unlawful or harmful; and the word "provocative" has more than one meaning such that his use of the term was too ambiguous, vague, and broad to draw any conclusions and Defendant is relying on speculation to question it. (*Id.*) Plaintiff contends the reaction to his request to meet and confer in person was exaggerated; he again objects based on mootness, irrelevance, and prejudice; and he asserts that meeting in person is more convenient, effective, and efficient. (*Id.*, p. 19.)

Plaintiff asserts that he "is at liberty to sign off any lawful way whether it be 'xoxo Big Daddy' or any other handle." (Doc. 117, p. 19.) Plaintiff describes his sign-off as merely "a kooky, disorienting moniker," and he denies any "element of sexual harassment because sexual organs are not even mentioned or any activities relating to such." (*Id.*) Additionally, Plaintiff argues that during his deposition, DAG Samson questioned him regarding the existence of an implied homosexual relationship with his cellmate and sexually transmitted diseases, in an attempt

7

to humiliate him; and that it would be prejudicial to sanction him for sexual harassment in light of her deposition questions.

### 3. Reply and Supplemental Exhibit

In response to Plaintiff's opposition, Defendant contends that Plaintiff fails to take responsibility for his actions and instead blames defense counsel, a position Defendant characterizes as astonishing and offensive. In addition, Defendant submits the letter Plaintiff sent to his new counsel, DAG Delgado, in response to the letter DAG Delgado sent Plaintiff following DAG Samson's reassignment. (Doc. 123, Reply, Ex. C.) DAG Delgado's letter, dated September 10, 2014, and served on Plaintiff on that date by the Litigation Coordinator at the prison, informed Plaintiff that DAG Delgado was now representing Defendant, that Plaintiff's previous harassment of DAG Samson would stop, and that any further communications would need to be respectful and professional. (*Id.*, Exs. A, B.) Defendant argues that Plaintiff's letter to DAG Delgado contained threats, improper requests, and unnecessary insults, further evidencing Plaintiff's engagement in inappropriate conduct toward Defendant's counsel.

In his supplemental exhibit brief, Plaintiff argues that in writing to DAG Samson, he was responding to mail from her, and he has not written to her since she was reassigned, which discredits Defendant's assertion he was obsessed with counsel. (Doc. 124, Supp. Ex., p. 1.) Moreover, he argues it is improper to accuse him of harassment when he was exercising due diligence in responding to correspondence he received. (*Id.*) Plaintiff submits his incoming and outgoing mail log as evidence of the correspondence between the parties. (*Id.*, Ex. A.)

### B. Availability of Sanctions Under Court's Inherent Authority

### 1. Legal Standard

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which … are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123 (1991) (internal quotation marks and citation omitted). "For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence and submission to their lawful mandates." *Chambers*, 501 U.S. at 43

(internal quotation marks and citation omitted). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotation marks and citation omitted).

Because of their very potency, however, federal courts' inherent authority to sanction conduct abusive of the judicial process must be exercised with restraint and discretion. *Id.* at 44 (quotation marks omitted and citation). Thus, sanctions imposed under the Court's inherent authority must be supported by a specific finding of bad faith, or conduct tantamount to bad faith. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001); *accord Miller v. City of Los Angeles*, 661 F.3d 1024, 1026 (9th Cir. 2011); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001). While recklessness, without more, does not suffice, "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 993-94.

### 2. **Bad Faith or Conduct Tantamount to Bad Faith**

In this case, Plaintiff's conduct over the course of four letters to DAG Samson is at issue. The first letter is slightly flippant in tone but, as Defendant concedes, is innocuous. The second letter is overly familiar and mocking in tone, as Defendant contends, and the third letter elevates the level of overfamiliarity and mocking tone. None of the three letters, however, rises to the level of bad faith conduct, or conduct tantamount to bad faith.

In contrast, inappropriate tone and content lacking any legitimacy pervade the fourth letter. The letter's contents are not offensive through inadvertence or negligence attributable to Plaintiff's pro se status, either. To the contrary, Plaintiff's writings evidence his intelligence and his keen awareness of his behavior and its effects. (Motion, Ex. D; Reply, Ex. C.) While Plaintiff may not understand the law as an attorney does, he is nevertheless in full control of the behavior at issue here, and the escalation in his letters evidences communication choices for which he bears full responsibility.

The Court finds that Plaintiff's conduct regarding the fourth letter was reckless and that it was undertaken to harass DAG Samson. Plaintiff is mistaken that proceeding pro se shields him from the consequences of his actions or excuses misbehavior. It does not. Parties and counsel

1 have a duty to behave civilly and respectfully toward one another, and conduct to the contrary is
2 sanctionable where it undermines the integrity of judicial proceedings.

3       The arguments Plaintiff advances in defense of his conduct lack merit.  The fact that DAG
4 Samson is no longer representing Defendant in this action does not render the issue of his
5 misconduct moot or irrelevant.  Moreover, Plaintiff's casting of his remarks as merely abrasive
6 and/or sarcastic is disingenuous.  A number of the remarks clearly have sexual overtones, and
7 Plaintiff's position that his remarks are above scrutiny because they were not more explicit is
8 untenable.[5]  With respect to Defendant's reproduction of the letter to include words and sentences
9 Plaintiff lined out as "overbearing," Plaintiff made no attempt to actually render the offending
10 passages unreadable.  To the contrary, they remain clearly legible and as such, contribute to the
11 overall tone of the letter.

12       The letter speaks for itself; it is inappropriate in tone and in content, without justification.
13 Plaintiff's attempt to divorce certain words or phrases from their common meanings and assign
14 them less suspect meanings is unpersuasive when the letter is viewed as a whole; the Court is not
15 required to suspend common sense or disregard the plain common meaning of words or phrases.
16 The Court finds that Plaintiff's fourth letter evidences inappropriate communication lacking in
17 legitimacy and laden with sexual overtone, and as such, the conduct was bad faith or tantamount to
18 bad faith and it supports the imposition of sanctions under the Court's inherent authority.  *Fink*,
19 239 F.3d at 993-94.

20       **3.**    **Availability of Terminating Sanctions**

21       Dismissal is a harsh penalty imposed only in extreme circumstances.  *Dreith v. Nu Image,*
22 *Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (quotation marks and citation omitted).  "[It] is an
23 available sanction when 'a party has engaged deliberately in deceptive practices that undermine
24 the integrity of judicial proceedings because courts have inherent power to dismiss an action when
25 a party has willfully deceived the court and engaged in conduct utterly inconsistent with the

---

[5] Also untenable is Plaintiff's argument that DAG Samson harassed him equally through her sexually-related deposition questions.  Plaintiff put his medical history at issue when he filed this action, and questions regarding his skin condition and other potential causes for that condition are relevant in light of his claim that he developed warts as a result of arsenic-contaminated water.  (Doc. 113-2, Exs. A, C; Doc. 115.)

10

orderly administration of justice.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch*, 69 F.3d at 348). The Court must consider five factors in evaluating the propriety of terminating sanctions: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Dreith*, 648 F.3d at 788 (quotation marks and citation omitted); *accord Leon*, 464 F.3d at 958; *Anheuser-Busch*, 69 F.3d at 348. Moreover, a relationship must exist "between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case." *Anheuser-Busch*, 69 F.3d at 348 (internal quotation marks and citation omitted).

In this case, the Court finds that none of the five factors weighs strongly in favor of dismissal. *See Dreith*, 648 F.3d at 788 (citing *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (in affirming a dismissal, least four factors must support dismissal or at least three factors must strongly support dismissal). Prejudice to Defendant and the availability of lesser sanctions form the critical inquiries, as the public's interest in expeditious resolution of litigation always favors dismissal, the public policy favoring disposition of cases on their merits always weighs against dismissal, *Pagtalunan v. Galaza*, 291 F.3d 639, 641 (9th Cir. 2002); *Yourish*, 191 F.3d at 990, and the conduct at issue has not affected the Court's ability to manage its docket, *see In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1226 (9th Cir. 2006) (unreasonable delay halted cases); *Pagtalunan*, 291 F.3d at 642 (delay caused by noncompliance of litigants); *Yourish*, 191 F.3d at 990-91 (delay caused by noncompliance with order).

Defendant argues that he will not be prejudiced by the dismissal, but that argument mischaracterizes the prejudice factor. "To prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Pagtalunan*, 291 F.3d at 642 (citing *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987)). The "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal," *Pagtalunan*, 291 F.3d at 642 (citing *Yourish*, 191

F.3d at 991), and at this stage and under the circumstances presented, the Court cannot discern any actual prejudice to Defendant as a result of Plaintiff's conduct.[6]  While Plaintiff's conduct was clearly extremely inappropriate, it did not impair Defendant's ability to go to trial or interfere with the rightful decision of the case.  *Id.* (quotation marks and citation omitted).

Finally, the availability of less drastic sanctions weighs against dismissal.  The conduct at issue has not been subject to previous sanctions scrutiny, and Defendant argues that in the alternative to termination, the Court should require Plaintiff to pay $5,100.00 before the case proceeds.  Plaintiff is incarcerated and proceeding in forma pauperis, however, and while Plaintiff's status might not preclude the Court from assessing monetary sanctions, that sanction would be meaningless and devoid of deterrent effect given its practical unenforceability.  *See Thomas v. Gerber Prod.*, 703 F.2d 353, 357 (9th Cir. 1983) (it is an abuse of discretion to select a sanction which cannot be performed).

Instead, the Court finds that a clear, direct admonition suffices at this juncture.  There is no question that Plaintiff's conduct toward DAG Samson was *unprofessional*, *lacking in civility*, and *unjustifiable*.  However, the Court finds an admonition to be effective at this juncture because the warning carries the weight of impact in the future regarding the Court's need to manage its docket, the risk of prejudice to the defendant, and the availability of less drastic sanctions, should the Court need to revisit a sanctions analysis.

Accordingly, Defendant's motion for either terminating sanctions or monetary sanctions is denied, but Plaintiff is admonished against any further instances of inappropriate (harassing) conduct toward Defendant or his attorneys.  Plaintiff's attempt to excuse his conduct as mere abrasiveness or sarcasm is devoid of merit, as is his argument that he is entitled to engage in such conduct.  *Plaintiff is warned that if this conduct is repeated, he may be subject to further sanctions, including dismissal of this action*.

///

///

---

[6] The Court does not find Defendant's argument regarding the costs incurred in reassigning the case to be particularly persuasive.  Reassignment of counsel within the Attorney General's Office during the life of a prisoner civil rights case is not unusual, notwithstanding the unusual reason for reassignment in this case.

### III. Plaintiff's Motion for Appointment of Counsel and Sanctions

Plaintiff seeks the appointment of counsel based on the referral of the harassment allegations against DAG Samson to the District Attorney's Office by prison staff. Plaintiff also seeks sanctions against Defendant for making misstatements to the Court in his motion for terminating sanctions.

#### A. Motion for Appointment of Counsel

Plaintiff does not have a constitutional right to the appointment of counsel in this action. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). The Court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1), but it will do so only if exceptional circumstances exist. *Palmer*, 560 F.3d at 970; *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). In making this determination, the Court must evaluate the likelihood of success on the merits and the ability of Plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Palmer*, 560 F.3d at 970 (citation and quotation marks omitted); *Wilborn*, 789 F.2d at 1331. Neither consideration is dispositive and they must be viewed together. *Palmer*, 560 F.3d at 970 (citation and quotation marks omitted); *Wilborn* 789 F.2d at 1331.

In the present case, the Court does not find the required exceptional circumstances. Even assuming that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. The Court is faced with similar cases almost daily. Further, at this stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits, and based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claim. *Palmer*, 560 F.3d at 970. Therefore, Plaintiff's motion for the appointment of counsel denied.

#### B. Motion for Sanctions

##### 1. Plaintiff's Position

Plaintiff first argues that Defendant's current counsel, DAG Delgado, improperly made "reckless misstatements" to make Plaintiff seem "despicable" to the Court, thereby prejudicing him. (Doc. 118, Motion, p. 2.) Plaintiff contends that DAG Delgado improperly included an

13

exclamation point rather than a period in his brief, in an effort to exaggerate counsel's claims and prejudice Plaintiff. (*Id.*) Plaintiff denies harassing and intimidating DAG Samson based on gender, and he appears to argue that for harassment purposes, both genders were treated equally. (*Id.*)

Plaintiff argues that the harassment allegations arise from four letters he sent over the course of three weeks, but he is entitled to respond to DAG Samson so long as legitimate purposes were involved and he received a letter from her dated August 6, 2014, stating her reluctance to respond to any more questions. (*Id.*) Plaintiff contends that in all instances, he communicated with DAG Samson by informing her of planned legal maneuvers, future filings, settlement demands, and alternative payment methods; and he believed that in filing a motion for summary judgment, he was required to informally confer with opposing counsel regarding his statement of material facts. (*Id.*) Plaintiff argues that those are the reasons underlying his letters to DAG Samson and since his letters "possessed" legitimate purpose, they should be exempt from being defined as harassing. (*Id.*)

Plaintiff challenges the interpretation of his statement that he was sending original copies of his letter "as a discourtesy" as baseless speculation and states that his skin condition is not contagious. Plaintiff also points out that he redacted some of the statements identified by Defendant as inappropriate and explained in the letter, "I caught some overbearing remarks so I struck 'em out." (Def. Ex. D, Letter 4.) Plaintiff further contends that Defendant's reference to his request for DAG Samson's photo and credentials and his statement regarding the currency value of provocative photos is misleading and not gender-based, because he stated the same thing to a male opposing counsel in another case. (Opp. 1, p. 3.) Plaintiff states he believed he was amongst adults, not children; and he argues that the stated concern over how far he might go if left unchecked is unsupportable and unfairly prejudicial given that his prison history is free of violence and inappropriate interaction with women. (Opp. 1, p. 3; Motion, 12:23.) Plaintiff also disputes Defendant's description of the facts underlying his criminal sentence as unfairly prejudicial; and he disputes Defendant's characterization of his remark about being a "self-proclaims exhibitionist" as sexual in nature. (Opp. 1, p. 3; Def. Ex. C.) Plaintiff contends he was

referring to being a "show-off," like he was during his deposition, and not a "flasher." (Opp. 1, p. 3.) Finally, Plaintiff argues that nowhere in his letters did he demand racy photos of DAG Samson, and that Defendant makes a false distinction between DAG Samson's photos and photos of others. (Opp. 1, p. 3.) Plaintiff seeks counter-sanctions in the form of an admonishment and money deposited to his trust account based on Defendant's misstatements of fact.[7]

### 2.     **No Bad Faith or Conduct Tantamount to Bad Faith**

There is no support for a finding that Defendant or his current counsel acted in bad faith or in a manner tantamount to bad faith. *Fink*, 239 F.3d at 993-94. Abusive litigation conduct is subject to sanctions under the Court's inherent authority, as discussed in section II, and Defendant was legally entitled to seek sanctions based on the contents of letters he believed crossed the line between zealous advocacy and harassment. Although Plaintiff takes issue with Defendant's characterization of his statements and his intent, Defendant is entitled to identify what he believes are offending statements in Plaintiff's letters and to argue their meaning, either implied or express. To the extent Plaintiff disagreed, his recourse was to oppose those characterizations, which he did in his opposition. Plaintiff in fact made the statements which are at issue, and Defendant is permitted to argue the facts, which includes characterizing meaning and intent. As such, there is no support for a finding that Defendant's arguments were reckless and made in the advancement of an improper purpose, and Plaintiff's motion for sanctions is denied. *Id.*

## IV.   **Order**

Based on the foregoing, it is HEREBY ORDERED that:

1.  Defendant's motion for sanctions, filed on September 16, 2014, is GRANTED in part and DENIED in part as follows:

    a.  Defendant's motion for terminating sanctions is DENIED;

---

[7] Plaintiff also states, "If this is the proper platform, Plaintiff requests the Court to issue protective orders so that Samson's former involvement does not allow unrelated prison employees to act on events nearly a month ago." (Opp. 1, p. 4.) It is not; Plaintiff previously sought relief unrelated to the claim at issue and parties over whom the Court has jurisdiction and he was informed of the Court's jurisdictional limits. (Docs. 43, 59.) The Court lacks jurisdiction over prison employees at California State Prison-Centinela and Plaintiff lacks standing in this action to seek relief regarding his current conditions of confinement. *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04, 118 S.Ct. 1003 (1998); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562 (1969); *American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1061-62 (9th Cir. 2012); *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

        b.     Defendant's motion for monetary sanctions is DENIED; and

        c.     Defendant's motion for sanctions is GRANTED, in the form of an admonition;

2.    Plaintiff is required to refrain from engaging in illegitimate (harassing) conduct toward Defendant or his attorneys, in writing or otherwise; and his failure to do so is grounds for additional sanctions, including terminating sanctions;

3.    Defendant's motion for a stay pending resolution of his motion for terminating sanctions, filed on September 23, 2014, is DENIED as moot; and

4.    Plaintiff's motion for the appointment of counsel and for sanctions, filed on October 1, 2014, is DENIED.

IT IS SO ORDERED.

Dated:   **January 26, 2015**                 /s/ **Sheila K. Oberto**      
                                                                UNITED STATES MAGISTRATE JUDGE