1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY NGUYEN, | Case No.  1:11-cv-00809-AWI-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| M. D. BITER, | |
| Defendant. | (Docs. 114 and 142) |
| | Objection Deadline: 30 days |
| | Response Deadline: 15 days |

_____/

## I.    Background

Plaintiff Anthony Nguyen ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 18, 2011.  This action is proceeding against Defendant M. D. Biter ("Defendant") for violation of the Eighth Amendment of the United States Constitution.  Plaintiff's claim arises from his alleged exposure to arsenic-contaminated water while he was at Kern Valley State Prison ("KVSP") in Delano, California. During the relevant twenty-seven month time period, Defendant was first the Chief Deputy Warden, then the Acting Warden, and finally the Warden, a position he still presently holds.

On September 15, 2014, Plaintiff filed a motion for summary judgment, and on September 29, 2014, Plaintiff filed a supplement to his motion.[1]  Fed. R. Civ. P. 56(c).  (Docs. 114, 117.) Following resolution of numerous discovery motions and motions for terminating sanctions, to amend the pleadings, and for modification of the scheduling order, Defendant timely filed his opposition and cross-motion for summary judgment on July 20, 2015.[2]  (Doc. 142.)  On August 3, 2015, Plaintiff filed a response to Defendant's motion, entitled objections, and separate supplemental objections.  (Docs. 147, 148.)  Defendant filed a reply on August 17, 2015, and the cross-motions for summary judgment have been submitted on the record without oral argument pursuant to Local Rule 230(*l*).

**II.   Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

---

[1] Plaintiff's supplemental motion is confined to pages 1 through 8 of document 117.  Pages 9 through 52 were Plaintiff's opposition to Defendant's motion for terminating sanctions, which was addressed by the Court on January 27, 2015.  (Doc. 131.)

[2] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

1     In resolving cross-motions for summary judgment, the Court must consider each party's

2 evidence.  *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015);

3 *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).  Plaintiff bears the burden

4 of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no

5 reasonable trier of fact could find other than for him.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d

6 978, 984 (9th Cir. 2007).  Defendant does not bear the burden of proof at trial and in moving for

7 summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  *In re*

8 *Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

9     In judging the evidence at the summary judgment stage, the Court does not make

10 credibility determinations or weigh conflicting evidence, *Soremekun*, 509 F.3d at 984 (quotation

11 marks and citation omitted), and it must draw all inferences in the light most favorable to the

12 nonmoving party and determine whether a genuine issue of material fact precludes entry of

13 judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942

14 (9th Cir. 2011) (quotation marks and citation omitted).  Additionally, Plaintiff is entitled to liberal

15 construction of his filings because he is a prisoner proceeding pro se.  *Thomas v. Ponder*, 611 F.3d

16 1144, 1150 (9th Cir. 2010) (citations omitted).

17 **III.**    **Discussion**

18          **A.**    **Plaintiff's Eighth Amendment Conditions-of-Confinement Claim**

19                  **1.**    **Legal Standard**

20     Plaintiff's Eighth Amendment claim arises from his exposure to allegedly unsafe levels of

21 arsenic in the drinking water at KVSP, where he was incarcerated between November 2009 and

22 February 2012.[3]  The Eighth Amendment's prohibition against cruel and unusual punishment

23 protects prisoners not only from inhumane methods of punishment but also from inhumane

24 conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing

25 *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S.

26 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement

27

[3] Plaintiff is presently incarcerated at California State Prison-Centinela in Imperial.

28

3

may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. *Morgan*, 465 F.3d at 1045 (quotation marks and citations omitted); *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); *Rhodes*, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of serious harm to his health or safety. *E.g., Farmer*, 511 U.S. at 847; *Thomas*, 611 F.3d at 1150-51; *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

### 2.   Objective Element – Substantial Risk of Serious Harm

To prevail on his unsafe conditions-of-confinement claim, Plaintiff must first show a deprivation which is objectively sufficiently serious. *Farmer*, 511 U.S. at 834. Courts have long recognized that exposure to environmental conditions which pose a health risk, either present or future, can support a claim under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 33-35, 113 S.Ct. 2475 (1993) (environmental tobacco smoke); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (asbestos); *Carter v. Smith*, No. C-13-4373 EMC (pr), 2015 WL 4322317, at *7-11 (N.D.Cal.2015) (lead paint and asbestos); *Yellen v. Olivarez*, No. CIV S-94-1298 GEB DAD P, 2012 WL 3757373, at *8 (E.D.Cal. 2012) (contaminated water), *adopted in full*, 2012 WL 4210030 (E.D.Cal. 2012); *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *24-25 (E.D.Mich. 2011) (contaminated water), *adopted in full*, 2011 WL 893216 (E.D.Mich. 2011). Plaintiff is required to demonstrate that he was exposed to unreasonably high levels of arsenic in the water at KVSP, which requires a scientific and statistical inquiry into the seriousness of the

4

potential harm and the likelihood that such injury to health will actually be caused by the exposure to the arsenic in KVSP's water.  *Helling*, 509 U.S. at 35-36 (quotation marks omitted).   In addition, Plaintiff "must show that the risk of which he complains is not one that today's society chooses to tolerate."  *Id.* at 36.

### 3.   <u>Subjective Element – Deliberate Indifference</u>

The second element of an Eighth Amendment claim is subjective deliberate indifference, which involves two parts.  *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013).   Plaintiff must demonstrate first that the risk was obvious or provide other circumstantial evidence that Defendant was aware of the substantial risk of serious harm to his health or safety, and second, that there was no reasonable justification for exposing him to that risk.  *Lemire*, 726 F.3d at 1078 (citing *Thomas*, 611 F.3d at 1150) (quotation marks omitted).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.   "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  *Id.* at 838.   However, prison officials are not free to ignore obvious dangers to inmates.  *Farmer*, 511 U.S. at 842; *Foster*, 554 F.3d at 814.  Prisoners "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.   "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842; *Foster*, 554 F.3d at 814.

"In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm

1 ultimately was not averted." *Farmer*, 511 U.S. at 844. "A prison official's duty under the Eighth

2 Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison

3 officials' unenviable task of keeping dangerous men in safe custody under humane conditions."

4 *Id.* at 844-45 (internal quotation marks and citations omitted). "Whether one puts it in terms of

5 duty or deliberate indifference, prison officials who acted reasonably cannot be found liable under

6 the Cruel and Unusual Punishments Clause." *Id.* at 845.

7 **B.   Plaintiff's Motion for Summary Judgment**[4,5]

8     Plaintiff claims that Defendant violated his rights under the Eighth Amendment by

9 knowingly disregarding a substantial risk of serious harm to his health posed by the prison's

10 water, which he alleges was contaminated by unsafe levels of arsenic. Plaintiff arrived at KVSP

11 on November 2, 2009, and he was incarcerated there until February 2012, subjecting him to the

12 water for twenty-seven months. Plaintiff moves for summary judgment on his claim on the

13 grounds that KVSP's water was unsafe due to arsenic levels which exceeded the United States

14 Environmental Protection Agency's Maximum Contaminant Level ("EPA" and "MCL"), and that

15 Defendant, as the warden, knew of the unsafe arsenic levels but failed to take reasonable measures

16 to protect Plaintiff and other inmates from being harmed by the contaminated water.

17     In support of his motion, Plaintiff submits six notices entitled "IMPORTANT

18 INFORMATION ABOUT YOUR DRINKING WATER," which were signed by Defendant

19 between September 8, 2010, and January 6, 2012. (Doc. 114, Motion, Pl. Ex. 1.) The notices

20 stated that the running annual average of arsenic in KVSP wells 1 and 2 ranged between 0.014 to

21 0.020 mg/L (milligrams per liter), which exceeded the EPA MCL of 0.010 mg/L. (*Id.*) The

22 notices stated that it was not an emergency and that inmates did not need to use an alternative

23 water source such as bottled water, but that "some people who drink water containing arsenic in

---

24 [4] Plaintiff did not provide a Statement of Undisputed Facts in compliance with Local Rule 260(a). However, Plaintiff

25 is proceeding pro se and the Court is able to consider his arguments and evidence without the benefit of the statement. *Thomas*, 611 F.3d at 1150. Also, Defendant was able to sufficiently address Plaintiff's evidence. Therefore, the

26 Court will reach the parties' motions on their merits rather than denying Plaintiff's motion on procedural grounds.

27 [5] Plaintiff's original and supplemental complaints are verified and they function as declarations to the extent the allegations are based on personal knowledge of facts admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 922-23

28 (9th Cir. 2004).

excess of the MCL over many years may experience skin damage or circulatory system problems, and may have an increased risk to getting cancer." (*Id.*)

Plaintiff alleges that as a result of arsenic exposure, he developed warts on the palms of his hands, and hyperkeratosis or keratosis on his hands, mouth, and head; and he submits several medical records in support of his allegation that he developed these skin abnormalities as a result of the arsenic in KVSP's water.[6]  In a medical record dated December 6, 2011, Dr. DiLeo noted three 2 mm warts on Plaintiff's palm; and a pathology report related to the biopsy of tissue taken from Plaintiff's right soft palate on January 31, 2013, resulted in the finding of "hyperkeratosis and hyperplasia of squamous mucosa, mild chronic inflammation and fibrosis, no evidence of dysplasia or malignancy." (*Id.*, Pl. Exs. 2, 4.)  Finally, on August 20, 2014, Plaintiff was seen by Dr. Ortiz regarding a skin growth or papule on his forehead.  (Doc. 117, Supp. Motion, Ex. B.) Plaintiff was referred to the Minor Procedure Clinic for evaluation and consideration for a potential biopsy.  (*Id.*)

///
///
///
///
///
///
///
///
///
///
///
///

---

[6] Defendant's authentication and hearsay objections to Plaintiff's prison medical records are overruled.  Fed. R. Evid. 803(6); Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011); *U.S. v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005).  However, as discussed in section III(D)(1), Plaintiff lacks the requisite expertise to interpret his medical records. Fed. R. Evid. 701, 702.

**C.**     **Defendant's Motion for Summary Judgment**

**1.**     **Undisputed Facts**[7,8,9]

**a.**     **Arsenic Levels in Drinking Water**

Arsenic is the twentieth most abundant element on earth, and it is impossible to find drinking water in the environment that is free of arsenic; all public drinking water in the United States contains arsenic at some concentration.   Arsenic is not necessarily poisonous.   The difference between a medicine and a poison is the dose, and arsenic trioxide, for example, is a Food and Drug Administration-approved intravenous pharmaceutical.   Long-term consumption of very large amounts of arsenic in drinking water can cause disease, but these diseases are limited to very specific skin lesions; cancers of the skin, bladder and lung; cardiovascular and cerebrovascular diseases; and diabetes mellitus.   These diseases also typically require both exposure periods of twenty years or more and exposure to drinking water with arsenic concentrations of generally more than 200 micrograms per liter ("mcg/L") or 200 parts per billion ("ppb").   There is no scientific evidence that predicts illness from ingestion of drinking water at 26 ppb (0.026 mg/L), such as KVSP's water; and no epidemic of skin changes, internal organ cancers, or neurological and cardiac damage resulting from drinking water at or below an arsenic MCL of 50 mcg/L was ever identified in the United States.

In 2001, the EPA lowered the MCL to 0.010 mg/L (or 10 ppb or 10 mcg/L) of arsenic. This standard did not become effective until 2006, and on November 28, 2008, the State of

---

[7] Defendant's request for judicial notice of (1) CDCR, Quarterly Status Report of Capital Outlay Projects for the CDCR, Arsenic Removal Water Treatment System (March 31, 2013), and (2) State Water Resources Control Board, Division of Water Quality GAMA Program, Groundwater Information Sheet, Arsenic (revised July 6, 2010) is granted.  Fed. R. Evid. 201; *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *Siebert v. Gene Security Network, Inc.*, 75 F.Supp.3d 1108, 1111 n.2 (N.D.Cal. 2014).  (Doc. 142.)

[8] Defendant's cross-motion is supported by the declarations of Defendant; Dr. Rick Gellar, a physician and medical toxicologist; Dr. S. Lopez, an osteopathic physician and surgeon who is the Chief Medical Executive at KVSP; G. Wright, the Associate Director of the Project Management Branch for CDCR's Facility Planning; and T. Wise, the Correctional Plant Manager II.  Defendant also submits Plaintiff's deposition testimony.

[9] Plaintiff responded to Defendant's motion with numerous objections but none sufficed to bring Defendant's evidence into dispute.  Of specific note, Plaintiff's disagreement with Dr. Gellar's report neither creates disputed issues of fact nor provides a basis for any legitimate evidentiary objections; and Plaintiff's objections to counsel's arguments are misplaced.  (Docs. 147, 148.)  While Plaintiff is correct that defense counsel's arguments are not evidence, counsel is arguing the evidence, as is appropriate.

California adopted the EPA's new arsenic MCL standard.  Prior to 2001, the EPA's original 0.050 mg/L, or 50 ppb, MCL standard for arsenic in water had stood for many years; and the standard was lowered not in response to documented clinical illness caused by arsenic in drinking water between 10 and 50 mcg/L, but in an attempt to protect Americans from one type of disease: cancer.

KVSP's wells provide the water for the entire facility, and they provide the same drinking water to inmates and staff, including Defendant, who drank the water provided by the wells. KVSP has always tested the drinking water produced by its two wells and continues to do so to this day.  During the time Plaintiff was incarcerated at KVSP between November 2009 and February 2012, KVSP's wells were well under the former MCL standard of .050 mg/L.  Both wells ranged between 0.012 and 0.021 mg/L (12 and 21 ppb), which was in compliance with the prior standard.  As of July 2010, 1,375 of all active wells tested in California had arsenic above the new MCL, and the majority of those wells were located in Kern County, which is home to KVSP, as well as in San Joaquin and San Bernardino Counties.

While Plaintiff was at KVSP, it provided the test results for the water drawn from its wells to the California Department of Public Health ("CDPH").  During that time, KVSP also posted quarterly notices reporting the arsenic levels.  These notices conformed to the ones provided and required by CDPH.  The quarterly notices CDPH required KVSP to post stated that the arsenic levels were not an emergency, and that inmates and staff did not need to use an alternative water source.  KVSP also provided annual consumer confidence reports to inmates and staff.

Even if a resident of Kern County drank water similar to KVSP's containing between 13 to 26 ppb of arsenic for an entire lifetime, it is unlikely that any adverse health effects related to arsenic would occur because arsenic has not been scientifically established to be toxic in amounts below 50 mcg/L, as shown by the absence of apparent adverse effects on the many millions of Americans living for decades with this standard.  There are several studies that investigate regions in the United States where arsenic concentrations in local drinking water are higher than in other areas of the country.  The Central Valley in California, where KVSP is located, is frequently

1    mentioned, along with Fallon, Nevada; Michigan; and New Hampshire, but even in those areas

2    there are no cohorts of people seeking treatment for the adverse effects of arsenic.

3                   **b.**      **Health Concerns Related to Arsenic Level in KVSP's Water**

4             Dr. Lopez, the Chief Medical Executive ("CME") at KVSP, has not observed any

5    increased incidents in the inmate population of medical conditions, including skin conditions and

6    cancers, attributable to high levels of arsenic in drinking water.  As the CME, she closely

7    monitored the different medical conditions diagnosed in the inmate population, and would be

8    aware of any clusters of conditions that fell outside those normally expected in the inmate

9    population, including conditions caused by environmental factors.  In 2008, after inmates began to

10   ask about the health effects of the arsenic in the water, Dr. Lopez contacted the California Poison

11   Control System, Fresno/Madera, to inquire as to the possible health concerns raised by the levels

12   of arsenic detected in the water at KVSP.  Dr. Geller, M.D., M.P.H., from the California Poison

13   Control System, responded and informed Dr. Lopez that there were zero expected health

14   problems, acute or chronic, presented by arsenic at a concentration of 22 ppb, such as in KVSP's

15   water.  He also stated that there was no need for other public-health actions as a result of the

16   findings, just a regulatory need to get the arsenic level below 10 ppb.  Defendant was informed of

17   Dr. Lopez's inquiry and Dr. Geller's determination that there were no expected health concerns

18   from KVSP's water supply.

19            Plaintiff was provided with reasonable access to drinking water containing arsenic in

20   concentrations that were safe to drink.  There is no scientific evidence that Plaintiff was exposed

21   to arsenic in the drinking water provided to him at KVSP in sufficient amounts to cause the skin

22   and other conditions he complains of.  Typically, the skin conditions complained of by Plaintiff

23   are seen in individuals that consume concentrations of over 200 ppb for twenty years, but Plaintiff

24   only consumed water with a maximum level of 26 ppb (0.026 mg/L) for twenty-seven months.

25   The wart/corns, oral keratosis, and low lymphocyte and neutrophil counts that Plaintiff alleges he

26   suffered are not specific to arsenic exposure, and there is no evidence in Plaintiff's medical

27   records showing that he suffered any medical conditions caused by drinking KVSP's water.

28   Moreover, there is no evidence that he was exposed to arsenic in high enough doses for a long

enough time period to suffer any harm.  Plaintiff's future health will not be seriously adversely affected from consuming drinking water provided to him at KVSP between November 2, 2009, and February 1, 2012; and he does not have any appreciable or determinable risk of future illness, including cancer, from the arsenic in the drinking water at KVSP.  Plaintiff had Dr. DiLeo examine his warts/corns, but Dr. DiLeo did not note that they were caused by the arsenic in KVSP's water, and none of Plaintiff's doctors with California Department of Corrections and Rehabilitation ("CDCR") have informed him that any of his medical conditions were caused by the arsenic in KVSP's water.

### c.   **Installation of Arsenic Removal Plant at KVSP**

The process of installing an arsenic removal plant at KVSP began around the time that KVSP was constructed in 2005 and continued until it was completed between December 2012 and January 2013.  The installation of an arsenic removal plant is a long, complicated process that required capital outlay budget change proposals to fund the preliminary plan, working drawings, and construction of the facility.  It required input from consultants, engineers, CDCR and facility officials, and a number of state agencies.  KVSP's plant required funding through a capital outlay, which is an expenditure for fixed assets such as buildings and plants that requires a special request for funding that must proceed through the Department of Finance.  The original funding allocated for the plant was insufficient based on the preliminary plans and was returned, but in May 2009, the Public Works Board approved funds from General Fund AB 900 to modify the drawings and complete construction.

As the Warden, Defendant did not have the personal authority to authorize a project the size of the arsenic removal plant.  Any alternative plan, such as alternative water sources and point-of-use filtration systems, would have required the allocation and expenditure of funds. Defendant had the power to authorize expenditures up to $5,000, but any amount over that would require additional authorization, possibly including legislative authorization.

When Defendant became the acting Warden, the decision had already been made that the best approach to bringing the water into compliance with the revised MCL was to install an arsenic removal plant at KVSP.  At that point, consideration of other options was no longer

1  necessary because that option had been chosen; the arsenic removal plant was in the design and

2  planning stage; and Defendant had been informed that the water was not dangerous. Defendant

3  would generally defer to the expertise of KVSP and CDCR's staff on matters regarding arsenic;

4  and KVSP's plant operations staff and other staff involved in the process would report back to

5  Defendant regarding the progress of the planning, design, and installation of the plant. Further,

6  while KVSP was out of compliance with the MCL, it was never ordered to provide alternative

7  water, and it never had its permit revoked.

8  KVSP had previously considered drilling new wells or installing point-of-use filters at the

9  prison, but those alternatives were not viable because of cost, feasibility, and lack of a health risk.

10  CDCR had also considered the possibility of connecting to the City of Delano's water system.

11  During the design phase, a cost-benefit analysis was conducted to determine if connecting to the

12  City of Delano's system would be better than building a stand-alone plant at KVSP. The cost-

13  benefit analysis concluded that the KVSP stand-alone plant was the most beneficial option for a

14  number of reasons, including the speed at which the plant could be installed.

15  KVSP's staff provided input on the design of the arsenic removal plant, and during the

16  design phase, other arsenic removal facilities were toured in order to determine the type of facility

17  that would be best for KVSP. A pilot test of the technology chosen for the plan was conducted at

18  KVSP to make sure that the future plant would meet KVSP's filtration needs. Construction on the

19  arsenic removal plant at KVSP began in October 2011, and continued until finished in December

20  2012. The plant was completed and the project closed in January 2013.

21  KVSP's plant uses a coagulation/filtration process, which is considered a best-available

22  technology. Since completion of the KVSP arsenic removal plant, KVSP has been in compliance

23  with the current MCL standard; and KVSP continues to transmit the testing results to CDPH and

24  post the annual consumer confidence reports.

25  **2.** **Summary of Arguments**

26  Relying on these facts, Defendant argues that he is entitled to summary judgment because

27  Plaintiff failed to demonstrate either the existence of a substantial risk of serious harm from the

28  level of arsenic in KVSP's water or that he acted with deliberate indifference. Defendant contends

1   that the water at KVSP was suitable to drink and was in compliance with the prior MCL standard

2   of 0.50 mg/L.  Defendant contends that there is no scientific evidence that arsenic levels below

3   0.50 mg/L cause disease, and arsenic becomes poisonous in much higher levels – 200 ppb – when

4   consumed for twenty years or more.  Plaintiff's exposure involved much lower levels of arsenic

5   for a much shorter period of time.  Further, Defendant contends that Plaintiff failed to show he

6   suffered any actual harm from the water and while he complained of warts or corns and keratosis,

7   there is no evidence that they resulted from exposure to arsenic in the water.  There is also no

8   evidence Plaintiff will suffer any future harm to his health.

9          Further, Defendant contends that Plaintiff cannot prove the risk is one society chooses not

10  to tolerate, given that arsenic is an abundant natural element which is generally present in most

11  drinking water in the United States and is generally safe for consumption.  Both staff and inmates

12  consumed the water at KVSP; and CDPH, which required the prison to post the notices signed by

13  Defendant, did not suspend or revoke KVSP's water permit or order it to provide water from

14  another source.

15         Finally, Defendant contends that Plaintiff cannot establish that he was deliberately

16  indifferent or acted with deliberate indifference.  Defendant had been informed that the water

17  supply was safe and the notices he signed stated the arsenic levels in the water did not constitute

18  an emergency.  During the relevant events, CDCR and KVSP officials were actively involved in

19  installing an arsenic removal plant to bring the water into compliance with the new MCL standard.

20  It had been determined that the plant was the best option to address the arsenic in the water and

21  Dr. Lopez had been informed by the California Poison Control System that the water posed no risk

22  to inmate health, a determination which was shared with Defendant.  Given the facts, Defendant

23  contends that there was no risk to inmate health of which he was aware and that prison officials

24  acted reasonably in moving to bring KVSP's water into compliance with the new MCL standard.

25  ///

26  ///

27  ///

28  ///

1    **D.**    **Findings**

2        **1.**        **Plaintiff's Motion**

3            **a.**        **Objective Element**

4        Turning first to Plaintiff's motion for summary judgment, Plaintiff bears the burden of

5    demonstrating that no reasonable trier of fact could find other than for him.  *Soremekun*, 509 F.3d

6    at 984.   With respect to the objective element, Plaintiff must show that he was exposed to

7    unreasonably high levels of arsenic in the water.  *Helling*, 509 U.S. at 35.  As previously set forth,

8    this requires both "scientific and statistical inquiry into the seriousness of the potential harm and

9    the likelihood that such injury to health will actually be caused by exposure to [arsenic in the

10    water]," and that the risk "is not one that today's society chooses to tolerate."  *Id.* at 36.

11        Plaintiff has not submitted any evidence demonstrating that the exposure to the levels of

12    arsenic in KVSP's water, which ranged between 0.014 and 0.020 mg/L per the six notices posted,

13    for twenty-seven months constituted an objectively serious risk of harm to his health; it is not

14    enough to merely show that the levels exceeded the EPA's new MCL standard of 0.10 mg/L.  *Cf.*

15    *Wallis*, 70 F.3d at 1076 (stating it is uncontroverted that asbestos poses a serious risk to human

16    health and citing statutes in which there was a Congressional finding that medical science has not

17    established any safe minimum level of asbestos exposure) (quotation marks and citations omitted);

18    *Carter*, 2015 WL 4322317, at *8-10 (finding triable issues of fact on objective element of asbestos

19    exposure claim where there was evidence of government findings that medical science has not

20    established any minimum level of exposure to asbestos, but finding no triable issues of fact on

21    objective element of lead paint exposure claim).  Regarding Plaintiff's opinion that the water was

22    not safe, Plaintiff is not qualified, as a lay witness, to offer his own opinion that the arsenic levels

23    were sufficiently high to create a substantial risk of serious harm to his health.  Although Plaintiff

24    submitted evidence demonstrating that he developed several warts and nodules, there is no

25    evidence linking those growths to arsenic in the water at KVSP.  Speculation that Plaintiff's

26    medical conditions *could* be linked to the arsenic levels is not sufficient in the first instance, but

27    here, Plaintiff did not submit any admissible evidence that even speculatively links the two, and he

28

14

1  is not qualified to offer his own opinion on the issue, as it requires medical and/or toxicological

2  expertise he does not possess.[10]

3       Plaintiff also submitted some written information on arsenic, apparently obtained from the

4  internet and perhaps a book, to which Defendant objected.  (*Id.*, Ex. 3.)  However, the information

5  addresses arsenic at a broader level; the information is hearsay; and both the interpretation of the

6  information and the relation of that information to the arsenic levels in KVSP's water would

7  require toxicological and/or medical expertise, which has not been offered.[11]  Fed. R. Evid. 801(c),

8  802.  (*Id.*)

9       Having considered Plaintiff's evidence and arguments, the Court finds that Plaintiff failed

10  to produce any evidence demonstrating that level of arsenic in KVSP's water presented a

11  substantial risk of serious harm to his health.  It is not enough to show merely that the arsenic

12  levels exceeded the new MCL standard; and Plaintiff's inadmissible lay opinion on the matter

13  cannot be used to establish that the water presented an objective risk of serious harm to his health

14  as a matter of law.  Plaintiff also failed to produce any evidence "that the risk of which he

15  complains is not one that today's society chooses to tolerate."  *Helling*, 509 U.S. at 35-36.

16                        **b.    Subjective Element**

17       Next, Plaintiff fails to make the requisite showing as to the subjective element of deliberate

18  indifference.  Plaintiff has shown that Defendant signed six notices regarding arsenic levels in

19  KVSP's water exceeding the EPA's MCL standard but he has not demonstrated that Defendant

20  knowingly disregarded a substantial risk of harm to his health.  Bare knowledge of the fact that the

21  arsenic levels were above the EPA's MCL standard is not sufficient.  Indeed, the notices signed by

22  Defendant disclaimed any emergency situation or a need to use alternative water sources, such as

23

24  [10] Even if the Court were to consider the letter purportedly sent to Plaintiff by someone at the EPA in response to his
    inquiry, the letter undercuts rather than supports his position, as the author stated that "[h]yperpigmentation and
25  keratosis can occur from exposure to elevated levels of arsenic, such as 0.1-1.0 milligrams per day," but the water at
    KVSP was much lower in arsenic, and it was doubtful Plaintiff's warts were caused by the water.  (Doc. 114, Motion,
26  Pl. Ex. 4, p. 22.)  The Court notes the letter, which is missing a signature, was not authenticated, lacks foundation, and
    is hearsay.  Fed. R. Evid. 802; *Millenkamp v. Davisco Foods Intern, Inc.*, 562 F.3d 971, 980-81 (9th Cir. 2009).

27  [11] Plaintiff also submitted an article on arsenic and Napoleon's death.  (Doc. 114, Motion, Pl. Ex. 5.)  The article is
28  hearsay and irrelevant, as Defendant contends.  Fed. R. Evid. 401, 801(c), 802.

bottled water.  Plaintiff's opinions that the water was dangerous and that Defendant knew it was dangerous but failed to take additional protective measures do not constitute admissible evidence supporting a finding of deliberate indifference.  Further, there is no competent evidence that the elevated levels were dangerously high and constituted an obvious health risk.  *Farmer*, 511 U.S. at 842; *Foster*, 554 F.3d at 814.

In his motion, Plaintiff contends that Defendant admitted he was deliberately indifferent, and that by stating in response to an interrogatory that he would not recommend his family consume water deemed unfit for human consumption by the EPA, he demonstrated he was in a position to provide Plaintiff with safe drinking water but elected not to do so.  However, the "admission" Plaintiff refers to is an excerpt from an argument Defendant made in a reply to Plaintiff's opposition to his motion to dismiss for failure to state a claim.  (Doc. 86, Reply, 3:20-21.)  Arguments made in briefs are not evidence, *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 762 (9th Cir. 1987), and review of the paragraph in which the sentence was made is entirely consistent with Defendant's response that the word "not" was omitted due to a drafting error.  (Doc. 86, Reply, 3:15-22.)  Regarding Defendant's interrogatory response, there is no evidence that KVSP's water was unfit for human consumption, and Defendant's response that he would not recommend his family drink water unfit for human consumption is of no assistance in demonstrating that he knowingly disregarded a substantial risk of harm to Plaintiff with respect to KVSP's water.

Accordingly, the Court finds that Plaintiff has failed to produce evidence demonstrating that Defendant knew of a substantial risk of serious harm to his health but disregarded it.  Because Plaintiff's motion for summary judgment fails as to both elements, the Court recommends that it be denied.

### 2. Defendant's Motion

#### a. Objective Element

Regarding Defendant's motion for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.  Defendant has presented evidence from medical and toxicology experts establishing that although the arsenic

in KVSP's water exceeded the new EPA MCL standard, it was within the range acceptable under the prior EPA MCL; and that the change in the regulatory standard was not prompted by documented clinical illness caused by arsenic levels between 10 and 50 mcg/L in drinking water. Moreover, all public drinking water in the United States contains arsenic but even in those areas where the concentration of arsenic is higher than in other areas, the former of which includes the Central Valley, there are no cohorts of people seeking treatment for adverse effects from arsenic. One study in particular compared the population of a town in Kern County, where the arsenic concentration in the drinking water was 390 mcg/L, to a town in Wyoming where the concentration was 1 mcg/L, and researchers found no differences in the health statuses of the two populations.

Dr. Gellar, a physician who is board certified in internal medicine, emergency medicine, and medical toxicology, and who is employed by the California Poison Control System as the Medical Director and Managing Director, attested that in his expert opinion, even if one drank water containing between 13 and 26 ppb of arsenic for an entire lifetime, it would be unlikely that any adverse health effects related to the arsenic would occur. Dr. Gellar also attested that arsenic has not been established to be toxic in amounts below 50 mcg/L.

With respect to Plaintiff's medical conditions, Defendant points to the lack of any evidence that they were caused by KVSP's water. Plaintiff complained of low lymphocyte and neutrophil counts, but Dr. Gellar attested that there is no indication they were caused by arsenic exposure. Dr. Gellar also attested that a shift in lymphocyte levels is associated with viruses and a low neutrophil count has many different causes, but Plaintiff's blood counts were normal during incarceration with the exception of one time, and that abnormality was transient and of no medical significance. Plaintiff's right soft palate biopsy showed hyperkeratosis, a non-specific medical term that does not refer to a condition specific to arsenic exposure. Keratosis refers to any skin condition where there is an overgrowth and thickening of the corneal epithelium. Arsenical keratosis is one of numerous types of keratosis, and is the rarest type in the United States. Dr. Gellar opined that oral lesions such as Plaintiff's are generally not associated with or caused by arsenical keratosis, and there is no evidence that arsenical keratosis has ever been seen in the

California state prison population.  Additionally, the warts or corns on Plaintiff's palms were barely visible to the eye, and there is no indication they were caused by arsenic exposure.

The Court finds that Defendant has met his burden on summary judgment by producing evidence that drinking water containing arsenic in concentrations less than 50 mcg/L is safe to consume, that there is an absence of any evidence that Plaintiff's exposure to water containing arsenic between 0.012 and 0.021 mg/L posed a risk to his health, and that there is an absence of any evidence linking Plaintiff's medical conditions to the arsenic levels found in KVSP's drinking water.  Given Plaintiff's failure to submit any evidence raising a triable issue of fact regarding whether the arsenic levels in KVSP's water posed a substantial risk of serious harm to his health; caused him any health issues, present or future; or constituted a risk society is not willing to tolerate, Defendant is entitled to judgment on the objective element of Plaintiff's claim.

### b.   Subjective Element[12]

Defendant attested that the drinking water at KVSP is provided from wells, the same water is provided to both inmates and staff, bottled water was not provided to staff in response to the levels of arsenic in the water, and he has generally consumed the well water.  Further, once inmates began inquiring about possible health concerns in response to the notices being posted, Dr. Lopez, the CME at KVSP, contacted the California Poison Control System for information and Dr. Gellar informed her that the expected health problems caused by KVSP's water were zero and there was no need for any public-health actions.  Dr. Gellar's opinion, and Dr. Lopez's concurrence with it, was circulated to staff in 2008; and this information directly formed the basis for Defendant's belief that the level of arsenic in KVSP's water did not present any danger to staff or inmates, including Plaintiff.

Further, Defendant and other prison officials took action in response to the arsenic levels in KVSP's water and were moving forward with a plan to bring KVSP's water into compliance with the new MCL standard through an arsenic removal plant.  The process was lengthy and complicated, beginning in 2005 and ending in 2013; and other options were considered and

---

[12] Although the failure of proof as to the objective element is fatal to Plaintiff's claim, the Court elects to address the subjective element as well.  *Helling*, 509 U.S. at 35.

1  rejected, including drilling new wells to find a different water source, installing point-of-use

2  filters, and tying into the City of Delano's water system.  However, it was determined that the

3  likelihood of finding a compliant source of water was minimal; filters were not a viable option due

4  to feasibility, cost, and absence of any health risk; and the cost-benefit analysis showed that a

5  stand-alone arsenic removal plant at KVSP was the most beneficial option.

6          The Court finds that based on the evidence presented, Defendant has demonstrated that he

7  was unaware of any substantial risk of serious harm to Plaintiff's health presented by KVSP's

8  water, having specifically been informed that the water was safe by medical and toxicology

9  experts.  Further, Defendant did not disregard any substantial risk.  At the time Defendant became

10 the Acting Warden, an arsenic removal plant was already in the works and it was completed in

11 2013.  Due to the complexity of the project, it took years to plan and execute, and it had been

12 determined to be the most viable option for addressing the arsenic in KVSP's water.  Given the

13 lack of any evidence that the arsenic levels in KVSP's water presented a risk of harm to staff and

14 inmates, Defendant has demonstrated that reliance on the in-progress arsenic removal plant to

15 bring KVSP's water into compliance with the EPA's new MCL standard was reasonable and no

16 other shorter-term solutions, such as bottled water, were necessary or required.

17         Although Plaintiff argues that Defendant's deliberate indifference is evidenced by the

18 notices he signed, this argument lacks merit in light of the showing that the quarterly

19 informational notices were posted in conformity with CDPH requirements and the notices

20 specifically stated that it was not an emergency and there was no need to use bottled water.

21 Plaintiff has not submitted any evidence showing that the water at KVSP was unsafe to consume

22 due to the arsenic levels or refuting Defendant's position that he was informed by Dr. Lopez that

23 there were no health concerns due to the water.  Plaintiff also failed to submit any evidence

24 demonstrating that reliance on the arsenic removal plant was unreasonable.  *Farmer*, 511 U.S. at

25 844-45.  Plaintiff's argument that because Defendant had the authority to authorize expenditures

26 up to $5,000, he should have done something more has no merit given the evidence regarding the

27 lack of risk and the on-going progression toward an arsenic removal plant.  In light of Plaintiff's

28 failure to produce any evidence that Defendant was aware of any risk of harm from the water or

1   that Defendant failed to act reasonably in response to the risk presented, Defendant is also entitled

2   to judgment on the subjective element of Plaintiff's Eighth Amendment claim.

3   **IV.      Conclusion and Recommendation**

4        As discussed herein, the Court finds that Plaintiff did not meet his burden on summary

5   judgment in that he failed to affirmatively demonstrate that no reasonable trier of fact could find

6   other than for him.  In contrast, Defendant met his burden on summary judgment by producing

7   evidence that the water at KVSP did not present an objectively substantial risk of serious harm to

8   Plaintiff's health and that Defendant did not know of and disregard any risk of harm to Plaintiff's

9   health.  Because Plaintiff did not produce any evidence that creates disputed issues of material fact

10  as to either element of his claim, Defendant is entitled to judgment.[13]

11       Accordingly, for the reasons set forth herein, the Court RECOMMENDS that:

12       1.      Plaintiff's  motion  for  summary  judgment,  filed  on  September  15,  2014,  be

13              DENIED;

14       2.      Defendant's motion for summary judgment, filed on July 20, 2015, be GRANTED;

15              and

16       3.      Judgment  be  entered  in  favor  of  Defendant,  thus  concluding  this  action  in  its

17              entirety.

18       These  Findings  and  Recommendations  will  be  submitted  to  the  United  States  District

19  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

20  **thirty (30) days** after being served with these Findings and Recommendations, the parties may

21  file written objections with the Court.  Local Rule 304(b).  The document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Responses, if any, are due

23  within **fifteen (15) days** from the date the objections are filed.  Local Rule 304(d).  The parties are

24  advised that failure to file objections within the specified time may result in the waiver of rights on

25  ///

26  ///

27

28  _____
    [13] Given the determination that Defendant is entitled to judgment on the merits, the Court does not reach Defendant's
    alternative argument that he is entitled to qualified immunity.

appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **September 7, 2015**                          **/s/ Sheila K. Oberto**
                                                     UNITED STATES MAGISTRATE JUDGE